UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X

SHEET METAL WORKERS' NATIONAL
PENSION FUND; NATIONAL ENERGY
MANAGEMENT INSTITUTE COMMITTEE FOR
THE SHEET METAL AND AIR CONDITIONING
INDUSTRY; SHEET METAL OCCUPATIONAL
HEALTH INSTITUTE TRUST; INTERNATIONAL
TRAINING INSTITUTE FOR THE SHEET METAL
AND AIR CONDITIONING INDUSTRY; and
NATIONAL STABILIZATION AGREEMENT OF
THE SHEET METAL INDUSTRY FUND,

                                   Plaintiffs,

                -v-

MAXIMUM METAL MANUFACTURERS INC.,
STEVEN SMITH, as an individual, and ELVIS
MAYNARD, as an individual,

                                   Defendants.

------------------------------------------------------------------------X

13 Civ. 7741 (PAE)

OPINION & ORDER

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/18/2015

PAUL A. ENGELMAYER, District Judge:

On October 31, 2013, five multiemployer employee benefit plans—Sheet Metal Workers'

National Pension Fund ("Pension Fund"), National Energy Management Institute Committee for

the Sheet Metal and Air Conditioning Industry ("NEMIC"), Sheet Metal Occupational Health

Institute Trust ("SMOHIT"), International Training Institute for the Sheet Metal and Air

Conditioning Industry ("ITI"), and National Stabilization Agreement of the Sheet Metal Industry

Fund ("SASMI") (collectively, the "Benefits Funds")—commenced this action against

defendants Maximum Metal Manufacturers Inc. ("Maximum Metal"), Steven Smith, and Elvis

Maynard.  The Benefits Funds seek to collect delinquent fringe benefits contributions, interest,

liquidated damages, audit fees, attorneys' fees, and costs, together totaling nearly $200,000.

They sue corporate defendant Maximum Metal under § 502 of the Employee Retirement Income

Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132, and individual defendants Smith and

Maynard under § 404(a)(1) of ERISA, 29 U.S.C. § 1104(a)(1).

On October 24, 2014, the Benefits Funds moved for summary judgment and filed

supporting materials.  To date, defendants have not filed an opposition.  For the reasons set forth

below, the Benefits Funds' motion for summary judgment is granted in part, and denied in part.

## I.    Background[1]

### A.    The Parties

The Benefits Funds are employee benefit plans within the meaning of § 3(3) of ERISA,

29 U.S.C. § 1002(3).  Rule 56.1, ¶ 1.  Maximum Metal, incorporated in New York, is an

employer within the meaning of § 3(5) of ERISA, 29 U.S.C. § 1002(5).  *Id*. ¶¶ 2–3.  Maynard is

the principal owner of Maximum Metal, a closely held corporation, *id*. ¶ 6; Smith exercised

control over Maximum Metal's activities and operations by determining, *inter alia*, whether

Maximum Metal made contributions to the Benefits Funds, *id*. ¶¶ 14–17.

### B.    The Collective Bargaining Agreements

Under three consecutive collective bargaining agreements ("CBAs") between Sheet

Metal Workers' International Association Local Union No. 28, and Sheet Metal and Air

Conditioning Contractors Association of New York City, Inc. et al., Maximum Metal was

required to make monthly contributions to the Benefits Funds on behalf of its covered

employees.  Shaw Decl. ¶¶ 8–10.  The first CBA was effective between August 1, 2005 and July

31, 2009, Dubin Decl. Ex. C ("2005 CBA"); the second between August 1, 2009 and July 31,

---

[1] The facts that form the basis of this Opinion are drawn from the Complaint, Dkt. 1 ("Compl."); plaintiffs' Rule 56.1 Statement, Dkt. 33 ("Rule 56.1"); the declaration of Justin Sargent, Dkt. 35 ("Sargent Decl."), and the exhibit attached thereto; the declaration of Walter Shaw, Dkt. 36 ("Shaw Decl."), and the exhibits attached thereto; and the declaration of Jeffrey S. Dubin, Dkt. 37 ("Dubin Decl."), and the exhibits attached thereto.

2011, Dubin Decl. Ex. D ("2009 CBA"); and the third between September 15, 2011 and July 31, 2014, Dubin Decl. Ex. E ("2011 CBA").  Each CBA incorporates by reference the Agreements and Declarations of Trust of the Benefits Funds:

> The Employer agrees to be bound by the provisions of the Agreement and Declaration of Trust governing the various National Benefit Funds, and the interpretations thereof by the respective Board of Trustees of the Funds, as same may be amended from time to time, and hereby acknowledge[s] that such trust documents are incorporated herein by reference and are adopted by the Employer.

2005 CBA, Art. XII § 24(A); 2009 CBA, Art. XII § 24(A); 2011 CBA, Art. XII § 24(A).  The declarations of trust state that "'[c]ontributions' refer to the monies required to be paid to the Fund by Employers pursuant to a Collective Bargaining Agreement."  *See, e.g.*, Dubin Decl. Ex. F, Art. I § 5; *accord* Dubin Decl. Ex. I, Art. I § 6; Dubin Decl. Ex. J, Art. I § 4.  The CBAs set out the contribution rates for each of the Benefits Funds.  2005 CBA, Art. XII §§ 21–23; 2009 CBA, Art. XII §§ 21–23; 2011 CBA, Art. XII §§ 21–23.  They also state that, "[i]f delinquent, the Employer agrees to pay the interest, liquidated damages, attorneys' fees and costs as provided in the respective Trust Agreement."  2005 CBA, Art. XII § 26; 2009 CBA, Art. XII § 25; 2011 CBA, Art. XII § 25.

### C.    Procedural History

On October 31, 2013, the Benefits Funds filed a Complaint.  Dkt. 1.  It alleged that, between March 1, 2009 and July 31, 2013, Maximum Metal failed to make required contributions to the Benefits Funds.  Dubin Decl. ¶ 30; Compl. ¶ 18.  The Benefits Funds seek the delinquent contributions as well as interest thereon, liquidated damages, audit fees and costs, and reasonable attorneys' fees and costs.  Compl. ¶ 46.

On February 14, 2014, defendants filed an Answer.  Dkt. 15.  On October 24, 2014, the Benefits Funds moved for summary judgment and, in support, filed a brief, a Rule 56.1 Statement, and three declarations.  Dkt. 32–37.

On October 31, 2014, defense counsel filed a motion to withdraw as counsel for all three defendants.  Dkt. 39.  On November 4, 2014, the Court granted this motion with respect to the individual defendants, Maynard and Smith; it gave the corporate defendant, Maximum Metal, one month to obtain successor counsel.  Dkt. 41.  In a follow-up order, the Court stated that the deadline for all three defendants to respond to the Benefits Funds' summary judgment motion was January 2, 2015.  Dkt. 43.  The Court warned that, "[i]f the defendants fail to submit opposition papers to plaintiffs' motion, the Court will consider the plaintiffs' summary judgment motion to be unopposed."  *Id.*  On December 9, 2015, the Court reiterated these deadlines for any opposition to the summary judgment motion, and repeated its warning.  Dkt. 45.  On December 12, 2015, the Court granted Maximum Metal's counsel's motion to withdraw, and stated that all deadlines in the case remained in place.  Dkt. 47.  To date, defendants have not filed an opposition.[2]

---

[2] "It is settled law that a corporation may not appear in a lawsuit against it except through an attorney, and that, where a corporation repeatedly fails to appear by counsel, a default judgment may be entered against it pursuant to Rule 55" of the Federal Rules of Civil Procedure.  *SEC v. Research Automation Corp.*, 521 F.2d 585, 589 (2d Cir. 1975) (internal citation omitted).  Because no timely motion for a default judgment against Maximum Metal was filed, however, the Court reaches the merits of this case with respect to each defendant.  The decision the Court renders here, however, would not have differed had it granted a default judgment against Maximum Metal and then conducted an inquest into damages.  *Cf. Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 189 (2d Cir. 2015) (a default "is not considered an admission of damages" and the court may, *inter alia*, conduct hearings to assess damages) (citations and internal quotation marks omitted).

## II.    Discussion[3]

### A.    Applicable Summary Judgment Standard

To prevail on a motion for summary judgment, the movant must "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The movant bears the burden of demonstrating the absence of a question of material fact.  In making this determination, the Court must view all facts "in the light most favorable" to the non-moving party. *Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008); *see also Celotex Corp v. Catrett*, 477 U.S. 317, 323 (1986).  To survive a summary judgment motion, the opposing party must establish a genuine issue of fact by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009).  Only disputes over "facts that might affect the outcome of the suit under the governing law" will preclude a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In determining whether there are genuine issues of material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (citing *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)).

"Even when a motion for summary judgment is unopposed, the district court is not relieved of its duty to decide whether the movant is entitled to judgment as a matter of law." *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 242 (2d Cir. 2004); *see also Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir. 2001) ("[W]hen a nonmoving party chooses the perilous path of failing to submit a response to a summary judgment motion, the district court may not grant a

---

[3] The Court has jurisdiction under § 502 of ERISA, 29 U.S.C. § 1132, which also empowers the Benefits Funds to bring a civil action to collect the monies owed pursuant to the CBAs.

motion without first examining the moving party's submission to determine if it has met its

burden of demonstrating that no material issue of fact remains for trial. . . .").

However, "when the moving party has carried its burden . . . , its opponent must do more

than simply show that there is some metaphysical doubt as to the material facts," *Scott v. Harris*,

550 U.S. 372, 380 (2007) (citation and internal quotation marks omitted), and must offer "some

hard evidence showing that its version of the events is not wholly fanciful," *Miner v. Clinton*

*Cnty., N.Y.*, 541 F.3d 464, 471 (2d Cir. 2008) (citation and internal quotation marks omitted).

Indeed, "the plain language of Rule 56(c) mandates the entry of summary judgment, after

adequate time for discovery and upon motion, against a party who fails to make a showing

sufficient to establish the existence of an element essential to that party's case." *Celotex Corp.*,

477 U.S. at 322.  Although "Rule 56(e) permits a proper summary judgment motion to be

opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere

pleadings themselves," *id.* at 324, "'[t]he mere existence of a scintilla of evidence in support of

the [non-moving party's] position will be insufficient' to defeat a summary judgment motion,"

*Fabrikant v. French*, 691 F.3d 193, 205 (2d Cir. 2012) (quoting *Anderson*, 477 U.S. at 252).

Rule 56.1 of the Local Civil Rules for this District "requires a party moving for summary

judgment to submit 'a separate, short and concise statement' setting forth material facts as to

which there is no genuine issue to be tried." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 72 (2d Cir.

2001) (quoting Local Rule 56.1(a)).  "The facts set forth in a moving party's statement 'will be

deemed to be admitted unless controverted' by the opposing party's statement." *Id.* (quoting

Local Rule 56.1(c)).  Again, "while a court 'is not required to consider what the parties fail to

point out' in their Local Rule 56.1 statements, it may in its discretion opt to 'conduct an

assiduous review of the record' even where one of the parties has failed to file such a statement."

*Id.* (quoting *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 292 (2d Cir. 2000)).

**B.     Application**

For the reasons that follow, the Court grants summary judgment to the Benefits Funds with respect to their claims based on the 2009 and 2011 CBAs.  However, the Court denies summary judgment as to their claims based on the 2005 CBA.  The Court first addresses the Benefits Funds claims based on the 2005 CBA, and then addresses their claims based on the 2009 and 2011 CBAs.

**1.     Claims Based on the 2005 CBA**

The arbitration clause in the 2005 CBA is as follows:

> Any and all complaints, disputes, claims, differences, and/or grievances arising out of or relating to the interpretation or application of the provisions of this Agreement shall be settled, adjusted and disposed of in the following manner: . . .

> (D) Grievances not resolved under procedure described in (C) above because of deadlock or otherwise *shall be referred to arbitration* as set forth in Section 2 of this Article XVI.

2005 CBA, Art. XVI § 1 (emphasis added).

With regard to plaintiffs' claims based on the 2005 CBA, the Court denies plaintiffs' motion for summary judgment.  The arbitration clause in the 2005 CBA is binding, and plaintiffs have not explained why it does not apply or is overcome here.  Absent such a showing, the Court is compelled to hold that, even if the Benefits Funds are entitled to the relief they seek if pursued in a proper forum, they cannot—in this non-arbitral forum—recover the delinquent contributions, and associated interest, liquidated damages, and audit fees and costs they seek for the period of March 1, 2009 through July 31, 2009.

This conclusion flows from well-established legal principles regarding agreements to arbitrate.  First, the Federal Arbitration Act ("FAA") provides that an arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The Act, based on Congress's powers to regulate interstate commerce and admiralty, applies to any "contract evidencing a transaction involving commerce."  *Id.*; *see also Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 400 (1967).

In resolving a claim that an action must be directed to arbitration under an arbitration agreement, the Court must determine: (i) whether the parties entered into an agreement to arbitrate; (ii) if so, the scope of that agreement; (iii) if federal statutory claims are asserted, whether Congress intended those claims to be nonarbitrable; and (iv) if some, but not all, claims are subject to arbitration, whether to stay the balance of the proceedings pending arbitration.  *See Guyden v. Aetna, Inc.*, 544 F.3d 376, 382 (2d Cir. 2008); *JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 169 (2d Cir. 2004).

Where a binding agreement to arbitrate is found, "doubts concerning the scope of an arbitration clause should be resolved in favor of arbitration."  *Applied Energetics, Inc. v. NewOak Capital Mkts., LLC*, 645 F.3d 522, 526 (2d Cir. 2011).  Indeed, "where the contract contains an arbitration clause, there is a presumption of arbitrability . . . unless it may be said with positive assurance that the arbitration clause is not susceptible to an interpretation that covers the asserted dispute."  *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (citation and internal quotation marks omitted); *accord Volt Info. Sciences, Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 475–76 (1989); *Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 653 (2d Cir. 2004).

The Second Circuit has established a roadmap for determining whether a particular dispute falls within the scope of an agreement's arbitration clause:

> First, recognizing there is some range in the breadth of arbitration clauses, a court should classify the particular clause as either broad or narrow.  [Second], if reviewing a narrow clause, the court must determine whether the dispute is over an issue that is on its face within the purview of the clause, or over a collateral issue that is somehow connected to the main agreement that contains the arbitration clause.  Where the arbitration clause is narrow, a collateral matter will generally be ruled beyond its purview.  Where the arbitration clause is broad, there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it.

*Louis Dreyfus Negoce S.A. v. Blystad Shipping*, 252 F.3d 218, 224 (2d Cir. 2001) (citation omitted); *accord JLM Indus., Inc.*, 387 F.3d at 172.

Applying these principles here, the 2005 CBA contains a facially valid agreement to arbitrate.  The parties have not disputed the validity of the 2005 CBA in general or its arbitration clause specifically.

 Next, to determine the scope of the 2005 CBA arbitration clause, the Court considers the clause's text.  The clause states that "[a]ny and all complaints, disputes, claims, differences, and/or grievances arising out of or relating to the interpretation or application of the provisions of this Agreement . . . shall be referred to arbitration as set forth in Section 2 of this Article XVI."  2005 CBA, Art. XVI § 1.  The Second Circuit has described arbitration clauses that cover "any and all" claims as "inclusive, categorical, unconditional and unlimited."  *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1199 (2d Cir. 1996).  And it has stated that although the phrase "aris[ing] under" in an arbitration clause ordinarily limits the clause's scope, such is not so where the phrase is accompanied by the expansive phrase "relating to," in which case the arbitration clause is to be construed broadly.  *ACE Capital Re Overseas Ltd. v. United Life Ins. Co.*, 307 F.3d 24, 32 (2d Cir. 2002).  Such is the case here.  The operative text here—embracing "any and all . . .

9

disputes . . . arising out of or relating to"—makes this a quintessentially broad arbitration clause. *Id.*

If there were any doubt about the scope of the arbitration clause (and there is not), it would be dispelled by comparing the arbitration clause in the 2005 CBA with that in the 2009 and 2011 CBAs.  The arbitration clause reads as follows in the 2009 and 2011 CBAs:

> Any and all complaints, disputes, claims, differences and/or grievances (*except that delinquent contributions may also be resolved outside this procedure by bringing an action in federal court or through a motion for administrative expenses/proof of bankruptcy court*) arising out of or relating to the interpretation or application of the provisions of this Agreement shall be settled, adjusted, and disposed of . . . [primarily through arbitration].

2009 CBA, Art. XVI § 1; 2011 CBA, Art. XVII § 1 (emphasis added).  Unlike the 2005 CBA's sweeping arbitration clause, the 2009 and 2011 CBAs contain an express exception that permits disputes about delinquent contributions to be brought in federal court.  This change from 2005 to 2009 confirms the Court's construction of the arbitration clause in the 2005 CBA.

The Court next examines whether Congress intended the claims in this case, which are brought under ERISA, a federal statute, to be nonarbitrable.  The Second Circuit has held, "after careful review of ERISA's text and legislative history, that Congress did not intend to preclude waiver of a judicial forum for claims arising under ERISA."  *Feinberg v. Bear, Stearns & Co.*, No. 90 Civ. 5250 (JFK), 1991 WL 79309, at *3 (S.D.N.Y. May 3, 1991); *accord Bird v. Shearson Lehman/Am. Exp., Inc.*, 926 F.2d 116, 122 (2d Cir. 1991).  Such claims may therefore be settled through arbitration.

Accordingly, based on the presence of a mandatory clause committing this dispute to arbitration, the Court denies the Benefits Funds' summary judgment motion insofar as it is based

on the 2005 CBA.[4]  The Court is mindful that the Benefits Funds did not address the arbitration clause of the 2005 CBA in their moving papers; the Benefits Funds are therefore at liberty to move anew for summary judgment as to this claim in the event that there is evidence or legal authority undermining this Court's determination.  Otherwise, on an appropriate motion, the Court will compel arbitration as to this claim.

The Court next turns to the Benefits Funds' claims based on the 2009 and 2011 CBAs.  If those claims too were required to be resolved through arbitration—*i.e.*, if *all* claims in this case are required to be arbitrated—then the Court, upon granting a motion to compel arbitration, would stay this case pending the completion of arbitration.  *Katz v. Cellco P'ship*, 14 Civ. 138, 2015 WL 4528658, at *4 (2d Cir. July 28, 2015) (holding that a stay of proceedings is mandated "when *all* of the claims in an action have been referred to arbitration and a stay requested") (emphasis added).  But, if the Court is a proper forum to resolve the claims based on the 2009 and 2011 CBAs, then the Court may do so, notwithstanding the presence of claims (from the 2005 CBA) that may be resolved only in arbitration.

### 2.    Claims based on the 2009 and 2011 CBAs

The 2009 and 2011 CBAs do not contain a similar arbitration clause.  Rather, as noted, the clause in these two CBAs contains an exception that permits disputes over delinquent contributions to be brought in federal court.  2009 CBA, Art. XVI § 1; 2011 CBA, Art. XVII § 1. The Court therefore examines the merits of the delinquent contributions claims brought under these CBAs.

---

[4] To be sure, there are limited exceptions to the 2005 CBA's sweeping arbitration clause, *see* 2005 CBA, Art. XVI, § 1, A–C, but the Benefits Funds have made no allegations and no showing that any of these exceptions applies here.

### a.      Whether Maximum Metal, the Corporate Defendant, is Liable

Maximum Metal entered into contracts that required it to contribute to the Benefits Funds "for certain hours worked by participants employed by" Maximum Metal.  Dubin Decl. ¶ 11; *see also* Dubin Decl. Ex. L ¶ 1 ("Settlement Stipulation") ("Defendant Maximum Metal Manufacturers, Inc. agrees that it is a party to a collective bargaining agreement with Local Union 28, Sheet Metal Workers' International Association.").  The records of the Benefits Funds indicate that Maximum Metal failed to make contractually mandated contributions on several occasions between August 2009 and July 31, 2013, thus breaching the 2009 and 2011 CBAs. Shaw Decl. Ex. B.  Maximum Metal has not submitted any contrary evidence; therefore, the Court finds this as fact.  *See T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009) ("A nonmoving party's failure to respond to a Rule 56.1 statement permits the court to conclude that the facts asserted in the statement are uncontested and admissible.").

### b.      Whether Smith and Maynard, the Individual Defendants, are Liable

The Benefits Funds also seek to hold individual defendants Smith and Maynard liable for the delinquent contributions.  To the extent Smith and Maynard are fiduciaries under ERISA, they are properly held individually liable for Maximum Metal's delinquent contributions.  That is because ERISA protects employee pension and retirement plans by creating "strict standards of [fiduciary] conduct, also derived from the common law of trusts—most prominently, a standard of loyalty and a standard of care."  *Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.*, 472 U.S. 559, 570 (1985).  "Under ERISA, the duty of loyalty is expressed as follows: '(1) [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—(A) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries.'"  *Harris Trust & Sav. Bank v. John Hancock Mut. Life Ins.*

*Co.*, 302 F.3d 18, 26 (2d Cir. 2002) (quoting 29 U.S.C. § 1104(a)(1)(A)(i)).  ERISA

"supplements the duty of loyalty with an express prohibition on self-dealing."  *United Teamster*

*Fund v. MagnaCare Admin. Servs., LLC*, 39 F. Supp. 3d 461, 468–69 (S.D.N.Y. 2014); *see also*

29 U.S.C. § 1106(b) ("A fiduciary with respect to a plan shall not—(1) deal with the assets of

the plan in his own interest or for his own account . . . .").

      To determine whether Maynard and Smith are fiduciaries, the Court conducts a two-part

inquiry: "(1) Whether unpaid contributions are assets of the Benefit Funds; and (2) whether

Defendants exercised discretionary authority or control over those assets."  *Sheet Metal Workers'*

*Nat'l Pension Fund v. AUL Sheet Metal Works Inc.*, No. 10 Civ. 1371 (KBF), 2012 WL 32237,

at *4 (S.D.N.Y. Jan. 5, 2012); *accord NYSA-ILA Med. & Clinical Servs. Fund v. Catucci*, 60 F.

Supp. 2d 194, 200–01 (S.D.N.Y. 1999)).

      With regard to the first part of this inquiry, "[d]elinquent contributions to a benefit fund

are fund assets if so defined in the agreement creating the fund."  *Trs. of the Plumbers Local*

*Union No. 1 Welfare Fund, Additional Sec. Ben. Fund, Vacation & Holiday Fund, Trade Educ.*

*Fund & 401(k) Sav. Plan v. Philip Gen. Constr.*, No. 05 Civ. 1665 (NG) (RLM), 2007 WL

3124612, at *5 (E.D.N.Y. Oct. 23, 2007); *see also United States v. Panepineto*, 818 F. Supp. 48,

51 (E.D.N.Y. 1993); *Hanley v. Giordino's Restaurant, Inc.*, No. 94 Civ. 4696 (RPP), 1995 WL

442143, at *4 (S.D.N.Y. July 26, 1995).  Here, each CBA states that:

> Employer contributions are considered assets of the respective Funds and title to all
> monies paid into and/or due and owing said Funds shall be vested in and remain
> exclusively in the Trustees of the respective funds.  The Employer shall have no
> legal or equitable right, title or interest in or to any sum paid by or due from the
> Employer.

2005 CBA, Art. XII § 24(B); 2009 CBA, Art. XII § 24(B); 2011 CBA, Art. XII § 24(B).  This

language is crystal clear:  The unpaid contributions are explicitly plan assets under ERISA.

With regard to the second part of the inquiry, the record evidence shows that the individual defendants exercised discretionary control over Maximum Metal's assets. "Congress intended ERISA's definition of fiduciary 'to be broadly construed.'" *LoPresti v. Terwilliger*, 126 F.3d 34, 40 (2d Cir. 1997) (quoting *Blatt v. Marshal & Lassman*, 812 F.2d 810, 812 (2d Cir. 1987)). An individual may be an ERISA fiduciary by "exercis[ing] any authority or control respecting management *or* disposition of [plan] assets." *Id.* (quoting 29 U.S.C. § 1002(21)(A)) (emphasis and second brackets in original). Here, Maynard was Maximum Metal's principal owner and "exercised control over the activities and operations" of the closely held corporation, Rule 56.1, ¶ 13 (citing Dubin Decl. Ex. K (defendants' responses to request for admission, no. 8)); and Smith "determined whether or not Maximum Metal made contributions to the Benefits Funds," *id*. ¶ 14 (citing Dubin Decl. Ex. K (defendants' responses to request for admission, no. 9)), and "decided which accounts payable were to be paid by Maximum Metal," *id*. ¶ 17 (citing Dubin Decl. Ex. K (defendants' responses to request for admission, nos. 9, 11, 15, 21, 27, 29)). Maynard and Smith thus exercised discretionary control and discretionary authority, respectively, over the Benefits Funds. Indeed, in a recent Settlement Stipulation in a separate case in which the same Benefits Funds brought ERISA claims under the same CBAs for delinquent contributions, Maynard and Smith "agree[d] that they are liable as individuals for the contributions sought." Dubin Decl. Ex. L, ¶ 2 (citing *Sheet Metal Workers' Nat'l Pension Fund v. Maximum Metal Manufacturers Inc.*, 13 Civ. 1592 (AKH), Settlement Stipulation (Dec. 9, 2013)). Accordingly, the Court finds that Maynard and Smith are fiduciaries.

When fiduciaries breach their duties, they are personally liable for the losses to the funds resulting from their breach. *Sheet Metal Workers' Nat'l Pension Fund*, 2012 WL 32237, at *5; 29 U.S.C. § 1109(a). The Court thus finds that Maynard and Smith each failed to make required

contributions to the Benefits Funds during the period between August 1, 2009 and July 31, 2013, and thereby breached their "obligation to hold assets of the Benefit[s] Funds for the exclusive benefit of the participants and beneficiaries of the Funds." *Id.*

The Court notes that two theoretically available defenses to individual liability have not been raised.  Maynard and Smith do not "argue[] or even suggest[] that the required contributions are illegal or that the CBA is void." *Sheet Metal Workers Nat'l Pension Fund v. Evans*, No. 12 Civ. 3049 (JFB) (GRB), 2014 WL 2600095, at *7 (E.D.N.Y. June 11, 2014).  "Therefore, the Court must enforce the unambiguous terms of the CBA, which make defendant[s] liable to plaintiffs for the delinquent contributions." *Id.*  As such, the Court finds Maynard and Smith individually liable for the delinquent contributions owed to the Benefits Funds under the 2009 and 2011 CBAs.

### E.     Damages

Under ERISA § 502(g)(2), "[i]n any action . . . for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan—(A) the unpaid contributions, (B) interest on the unpaid contributions, (C) an amount equal to the greater of—(i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent . . . , (D) reasonable attorneys' fees and costs of the action, to be paid by the defendant, and (E) such other legal or equitable relief as the court deems appropriate."  29 U.S.C. § 1132(g)(2).

Here, the Benefits Funds have submitted rate sheets that "show the contract contribution rates for the various Funds for the various categories of employees," Shaw Decl. ¶ 20; *see also* Shaw Decl. Ex. A, and schedules of past contributions which "show the amounts due from an employer[,] the amounts contributed by that employer, and the balances owed by that employer,

to the various Funds," Shaw Decl. ¶ 23; *see also* Shaw Decl. Ex. B.  The audit reports reflect that Maximum Metal owes a total of $166,367.37 in fund contributions, interest (calculated through October 22, 2014), liquidated damages, and audit fees and costs.[5]  Shaw Decl. Ex. D.  The defendants have not disputed this data, let alone come forward with evidence supporting a contrary damages calculation.

The Court therefore grants summary judgment to the Benefits Funds for the delinquent contributions, interest, liquidated damages, and audit fees and costs associated with the 2009 and 2011 CBAs.  Accordingly, the Court directs the Benefits Funds to submit revised calculations reflecting the damages due under these CBAs.

### F.  Reasonable Attorneys' Fees and Costs

Plaintiffs also seek reasonable attorneys' fees and costs, to which they are entitled under the CBAs and ERISA § 502(g)(2).  *See, e.g.*, *Evans*, 2014 WL 2600095, at *8; 29 U.S.C. § 1132(g)(2) ("In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan— . . . (D)  reasonable attorney's fees and costs of the action, to be paid by the defendant . . . .").

#### 1.  Attorneys' Fees

The party seeking attorneys' fees "bears the burden of . . . documenting the appropriate hours expended and hourly rates."  *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).  The starting point for calculating a "presumptively reasonable fee" is "the lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case."  *Millea v.*

---

[5] The calculations of outstanding contributions are based on the audit report of Calibre CPA Group and on reports submitted by the defendants.  *See generally* Shaw Decl.

*Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011); *see generally Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542 (2010). "The presumptively reasonable fee boils down to 'what a reasonable, paying client would be willing to pay,' given that such a party wishes 'to spend the minimum necessary to litigate the case effectively.'" *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 493 F.3d 110, 112, 118 (2d Cir. 2007), *amended on other grounds by* 522 F.3d 182 (2d Cir. 2008)). Courts are obligated to exclude hours that are "excessive, redundant, or otherwise unnecessary." *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) (quoting *Hensley*, 461 U.S. at 434). The reasonableness of hourly rates are guided by the market rate "[p]revailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). The relevant community is this District. *Arbor Hill Concerned Citizens*, 522 F.3d at 190–91.

Here, to support their request for attorneys' fees, plaintiffs' counsel submitted a declaration containing invoices that detailed the tasks performed and the hours worked. *See* Dubin Decl. Ex. M. This declaration reflects that one attorney, Jeffrey S. Dubin, Esq. (the principal of the firm representing plaintiffs, Jeffrey S. Dubin, P.C.), has 42 years of experience in labor relations law and employee benefits law; he billed at a rate of $300 per hour. Dubin Decl. ¶¶ 36, 38. His associate, Amy E. Strang, Esq., who has five years of experience litigating, billed at a rate of $225 per hour. *Id.* ¶ 39.

"In the Southern District of New York, fee rates for experienced attorneys in small firms generally range from $250 to $450 in civil cases." *Watkins v. Smith*, No. 12 Civ. 4635 (DLC), 2015 WL 476867, at *3 (S.D.N.Y. Feb. 5, 2015) (citing, *inter alia*, *K.L. v. Warwick Valley Cent. Sch. Dist.*, 12 Civ. 6313 (DLC), 2013 WL 4766339, at *7 (S.D.N.Y. Sept. 5, 2013), *aff'd,* 584 F.

App'x 17 (2d Cir. 2014) (summary order)); *see also Shihan Chen v. Arts Nail Putnam Valley, Inc.*, No. 14 Civ. 3037 (ALC) (JCF), 2015 WL 2381033, at *1 (S.D.N.Y. May 13, 2015) ("The rate of $350.00 per hour charged by plaintiffs' counsel Jian Hang is reasonable for the principal of a small firm in this district.") (citing *Tucker v. City of New York*, 704 F. Supp. 2d 347, 361 (S.D.N.Y. 2010) (awarding hourly rate of $350 to sole practitioner in civil rights case); *Shaw Family Archives, Ltd. v. CMG Worldwide, Inc.*, 589 F. Supp. 2d 331, 339–40 (S.D.N.Y. 2008) (awarding hourly rate of $400 to sole practitioner in intellectual property case)). Accordingly, the Court approves a rate of $300 per hour for Dubin. *Accord Evans*, 2014 WL 2600095, at *10 ("For a partner of [Jeffrey] Dubin's experience level, in a *pro se* case involving uncomplicated issues, $300.00 is a reasonable rate.").

As to Strang, courts in this District have found rates of $125–$300 per hour reasonable for associates, depending on, *inter alia*, their experience. Specifically, "[c]ourts in this district have awarded a rate of $300 per hour for senior associates with at least eight years of experience," while they "typically award rates in the range of $125–215 to associates with three years of experience or less." *Apolinario v. Luis Angie Deli Grocery Inc.*, No. 14 Civ. 2328 (GHW), 2015 WL 4522984, at *3 (S.D.N.Y. July 27, 2015) (collecting cases). Courts have awarded up to $300 per hour for associates in ERISA cases. *See, e.g.*, *N.Y.C. Dist. Council of Carpenters v. Rock-It Contracting, Inc.*, No. 09 Civ. 9479 (JGK) (AJP), 2010 WL 1140720, at *4 (S.D.N.Y. Mar. 26, 2010), *report and recommendation adopted*, 2010 WL 1558568 (S.D.N.Y. Apr. 19, 2010) (collecting cases); *N.Y. Dist. Council of Carpenters Pension Fund v. Perimeter Interiors, Inc.*, 657 F. Supp. 2d 410, 424 (S.D.N.Y. 2009). For associates, courts have also awarded the precise rate, $225, sought for Strang. *See, e.g.*, *Reith v. Allied Interstate, Inc.*, No. 12 Civ. 4278 (PKC), 2012 WL 5458007, at *3 (S.D.N.Y. Nov. 8, 2012). And this rate is

reasonable in light of Strang's experience. *Cf. Apolinario*, 2015 WL 4522984, at *3.
Accordingly the Court approves a rate of $225 per hour for Strang.

"As for the number of hours expended, courts uphold fee requests in ERISA cases when
they determine that such fees are 'reasonable.'" *Finkel v. Jones Lang LaSalle Am., Inc.*, No. 08
Civ. 2333 (RRM) (RML), 2009 WL 5172869, at *5 (E.D.N.Y. Dec. 30, 2009) (citation omitted);
*see also McDonald v. Pension Plan of the NYSA-ILA Pension Trust Fund*, 450 F.3d 91, 96 (2d
Cir. 2006). The Court has reviewed the detailed invoices provided by plaintiffs' counsel, and
they reflect sound billing practices: thorough, detailed, relevant, easy to understand, containing
limited block-billing,[6] with no evident duplication of effort. However, recognizing that some
amount of counsel's work appears to have included making calculations specific to the 2005
CBA—for example, two billing entries refer generally to "calculat[ing] monthly payment
amounts" and "discuss[ing] amounts owed"—which falls outside the scope of the relief entered
here, the Court will reduce the attorneys' fees by 5% of the request. So reduced, the Court finds
the hours that counsel expended reasonable. The Court accordingly grants plaintiffs' counsel
attorneys' fees in the amount of $24,217.88 (rather than $25,492.50, as requested).

### 2. Costs

To support their request for reasonable costs, plaintiffs' counsel included an itemization
of the costs incurred over the course of this action. *See* Dubin Decl. Ex. N. Plaintiffs seek to
recover $940.68 in "filing fees, process server fees and postal charges." Dubin Decl. ¶¶ 40–41.
Courts in this Circuit will generally grant "those reasonable out-of-pocket expenses incurred by

---

[6] Block-billing is the practice of "grouping multiple tasks into a single billing entry, so as to
leave unclear how much time was devoted to each constituent task." *Doe v. Delta Airlines, Inc.*,
No. 13 Civ. 6287 (PAE), 2015 WL 1840264, at *3 (S.D.N.Y. Apr. 21, 2015) (quoting *Themis
Capital v. Democratic Republic of Congo*, No. 09 Civ. 1652 (PAE), 2014 WL 4379100, at *6
(S.D.N.Y. Sept. 4, 2014)).

attorneys and ordinarily charged to their clients." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998) (quoting *United States Football League v. National Football League*, 887 F.2d 408, 416 (2d Cir. 1989)). "[U]nder Local Civil Rule 54.1, 'the party must include as part of the request an affidavit that the costs claimed are allowable by law, are correctly stated and were necessarily incurred, and [b]ills for the costs claimed must be attached as exhibits.'" *Evans*, 2014 WL 2600095, at *11 (quoting *D.J. ex rel. Roberts v. City of New York*, No. 11 Civ. 5458 (JGK) (DF), 2012 WL 5431034, at *9 (S.D.N.Y. Oct. 16, 2012), *report and recommendation adopted sub nom. Roberts v. City of New York*, 2012 WL 5429521 (S.D.N.Y. Nov.7, 2012)). Because plaintiffs' counsel did so in this case, the Court finds costs in the amount of $940.68 reasonable.

Accordingly, the Court grants the Benefits Funds' requests for reasonable attorneys' fees (as modified above) and for costs.

### G.    Next Steps as to Plaintiffs' Claims Under the 2005 CBA

Because no application to compel arbitration of plaintiffs' claims under the 2005 CBA has been made, the Court does not grant that relief.  The Court stands ready to do so, on an appropriate application.  The Court directs plaintiffs, within two weeks of this decision, *i.e.*, by Tuesday, September 1, 2015, either to (1) make such a motion or (2) move anew for summary judgment as to the 2005 CBA claim, this time explaining, with reference to on-point case authority, the basis for any claim that the arbitration clause in that CBA does not mandate arbitration.  In the event that no such filing is received, the Court expects to dismiss, *sua sponte*, plaintiffs' claims based on the 2005 CBA, on the grounds that this Court is not a proper forum to resolve these claims, and that if plaintiffs are to pursue such claims, they must do so in arbitration.

## CONCLUSION

For the reasons stated herein, the Benefits Funds' motion for summary judgment is granted against all defendants for the period from August 1, 2009 through July 31, 2013. However, the Court denies summary judgment as to the portion of the Benefits Funds' claims relating to contributions for the period between March 2009 and July 2009, because those claims are subject to a binding arbitration clause in the 2005 CBA. The Benefits Funds are directed to recalculate the delinquent contributions, interest, liquidated damages, and audit fees to reflect this decision, and to submit to the Court their revised calculations by September 1, 2015. The Benefits Funds are also awarded attorneys' fees, in the amount of $24,217.88, and costs in the amount of $940.68. The Benefits Funds are further directed, by September 1, 2015, to notify the Court as to their intentions with respect to claims under the 2005 CBA, as addressed herein.

The Clerk of Court is respectfully directed to terminate the motion pending at docket number 32.

SO ORDERED.

PAUL A. ENGELMAYER
United States District Judge

Dated: August 18, 2015
        New York, New York