UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

SHEET METAL WORKERS' NATIONAL
PENSION FUND; NATIONAL ENERGY
MANAGEMENT INSTITUTE COMMITTEE FOR
THE SHEET METAL AND AIR CONDITIONING
INDUSTRY; SHEET METAL OCCUPATIONAL
HEALTH INSTITUTE TRUST; INTERNATIONAL
TRAINING INSTITUTE FOR THE SHEET METAL
AND AIR CONDITIONING INDUSTRY; and
NATIONAL STABILIZATION AGREEMENT OF
THE SHEET METAL INDUSTRY FUND,

        Plaintiffs,

  -v-

MAXIMUM METAL MANUFACTURERS INC.,
STEVEN SMITH, as an individual, and ELVIS
MAYNARD, as an individual,

        Defendants.

------------------------------------------------------------X

13 Civ. 7741 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

  This decision resolves a motion for summary judgment in this action commenced by five multiemployer employee benefit plans—Sheet Metal Workers' National Pension Fund ("Pension Fund"), National Energy Management Institute Committee for the Sheet Metal and Air Conditioning Industry ("NEMIC"), Sheet Metal Occupational Health Institute Trust ("SMOHIT"), International Training Institute for the Sheet Metal and Air Conditioning Industry ("ITI"), and National Stabilization Agreement of the Sheet Metal Industry Fund ("SASMI") (collectively, the "Benefits Funds")—against defendants Maximum Metal Manufacturers Inc. ("Maximum Metal"), Steven Smith, and Elvis Maynard. The Benefits Funds seek to collect delinquent fringe benefits contributions, interest, liquidated damages, audit fees, attorneys' fees, and costs, arising from defendants' failure to make contributions as required under three

consecutive collective bargaining agreements ("CBAs") in 2005, 2009, and 2011. They sue corporate defendant Maximum Metal under § 502 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132, and individual defendants Smith and Maynard under § 404(a)(1) of ERISA, 29 U.S.C. § 1104(a)(1). The Court has already granted summary judgment for the Benefits Funds as to claims under the 2009 and 2011 CBAs. *See Sheet Metal Workers' Nat. Pension Fund v. Maximum Metal Mfrs. Inc.*, No. 13 Civ. 7741 (PAE), 2015 WL 4935116, at *9 (S.D.N.Y. Aug. 18, 2015).

For the reasons that follow, the Court grants summary judgment for the Benefits Funds as to claims arising under the 2005 CBA, and further directs the Benefits Funds to file a recalculation of prejudgment interest before the Court enters final judgment on all claims.

## I.   Background

The Court refers to its August 18, 2015 decision granting in part the Benefits Funds' motion for summary judgment for a full discussion of the factual background and procedural history to that point. *See Maximum Metal*, 2015 WL 4935116, at *1–2. In that decision, the Court granted summary judgment for the Benefits Funds on their claims based on the 2009 and 2011 CBAs (covering the period of August 1, 2009 through July 31, 2013). *See id.* at *9. But the Court denied summary judgment on the claims based on the 2005 CBA (covering the period from March 1, 2009 through July 31, 2009), explaining that the arbitration clause in that contract appeared to require those claims to be arbitrated. *See id.* at *6. Because that issue had not been briefed, however, the Court granted the Benefits Funds an opportunity to file another motion for summary judgment explaining why disputes arising under the 2005 CBA need not be resolved in arbitration, or, alternatively, to file a motion to compel arbitration. *See id.* at *11. The Court also directed the Benefits Funds to recalculate the delinquent contributions, interest, liquidated

damages, and audit fees to reflect the Court's holding that only claims covering the period of August 1, 2009 through July 31, 2013 were cognizable. *See id.* at *12.

On October 1, 2015, the Benefits Funds filed a renewed motion for summary judgment as to the March–July 2009 period (covered by the 2005 CBA). Dkt. 56. As defendants have failed to oppose this motion, it will be considered unopposed, as was the previous motion for summary judgment. *See* Dkt. 66.

## II. Discussion

### A. Applicable Summary Judgment Standards

To prevail on a motion for summary judgment, the movant must "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the burden of demonstrating the absence of a question of material fact. In making this determination, the Court must view all facts "in the light most favorable" to the non-moving party. *Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008); *see also Celotex Corp v. Catrett*, 477 U.S. 317, 323 (1986). To survive a summary judgment motion, the opposing party must establish a genuine issue of fact by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). Only disputes over "facts that might affect the outcome of the suit under the governing law" will preclude a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether there are genuine issues of material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (citing *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)).

"Even when a motion for summary judgment is unopposed, the district court is not relieved of its duty to decide whether the movant is entitled to judgment as a matter of law." *Vt. Teddy Bear Co. v. 1–800 Beargram Co.*, 373 F.3d 241, 242 (2d Cir. 2004); *see also Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir. 2001) ("[W]hen a nonmoving party chooses the perilous path of failing to submit a response to a summary judgment motion, the district court may not grant a motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial. . . .").

### B. Applicability of the Arbitration Clause in the 2005 CBA

In its August 18, 2015 decision, the Court held that the arbitration clause in the 2005 CBA was binding as to disputes over delinquent contributions during the period from March 1, 2009 to July 31, 2009. *See Maximum Metal*, 2015 WL 4935116, at *4. In their renewed motion for summary judgment, the Benefits Funds argue that, whatever the arbitration clause requires as to signatories to the 2005 CBA, the Benefits Funds themselves *were not* signatories; they were third-party beneficiaries to that contract. *See* Dkt. 58 ("Pl. Br."), at 3–4. Indeed, the signatories to the 2005 CBA were the Sheet Metal Workers' International Association Local Union No. 28 and two employers' organizations—the Sheet Metal & Air Conditioning Contractors Association of New York City, Inc. and SMACNA of Long Island, Inc. *See* Dkt. 61 ("Strang MSJ Decl."), Ex. C ("2005 CBA"), at 3 (preamble). Further, the Benefits Funds point to another section of the 2005 CBA, which, they say, provides for the Benefits Funds' recovery of delinquent contributions through commencement of a lawsuit, rather than through arbitration. That provision states:

> The Employer shall submit a remittance report and the required contributions to the NATIONAL BENEFIT FUNDS [*i.e.*, the Benefits Funds, plaintiffs in this case] by the twentieth (20th) of the month following the month when covered employment was performed. Failure to file said report with the required

4

> contributions adopted hereinabove shall constitute a delinquency in violation of the Employer's obligations under this Agreement. The Trustees and/or Directors of the various National Benefit Funds may take whatever steps they deem necessary, including legal action, to collect such delinquent payments and (sic) provision of the Agreement notwithstanding. If delinquent, the employer agrees to pay the interest, liquidated damages, attorney's fees and costs as provided in the respective Trust Agreement.

*Id.* Art. XII § 26.

The Court is persuaded that the Benefits Funds were not bound by the arbitration clause. Notably, Judge Matsumoto has recently held, with reference to the same Benefits Funds and the same language in the 2005 CBA, that the Benefits Funds are third-party beneficiaries and therefore "not bound by the requirement to arbitrate disputes arising under the CBA." *Trustees of the Sheet Metal Workers' Nat. Pension Fund v. Steel & Duct Fabrication, Inc.*, No. 14 Civ. 5503 (KAM), 2015 WL 4925170, at *6 (E.D.N.Y. Aug. 18, 2015). This holding is supported by ample case law. The Second Circuit has held that, subject to limited exceptions not relevant here, arbitration agreements are unenforceable against non-signatories. *Local Union No. 38, Sheet Metal Workers' Int'l Ass'n, AFL-CIO v. Custom Air Sys., Inc.*, 357 F.3d 266, 268 (2d Cir. 2004); *see also Steel & Duct Fabrication*, 2015 WL 4925170, at *5 (collecting cases). The Court is also persuaded that an express contractual provision appears to give the Benefits Funds authority to file suit in court—as opposed to bringing an arbitration—to collect delinquent contributions, notwithstanding any other provisions of the CBA. *See* 2005 CBA, Art. XII § 26.

Further, for the same reasons set forth in the Court's prior opinion, the Courts finds as fact that Maximum Metal failed to make contractually mandated contributions between March 1, 2009 and July 31, 2009. *See* Dkt. 57 ("Pl. 56.1"), ¶ 19; Dkt. 55 ("Shaw MSJ Decl."), Ex. B. The Court also finds, for the same reasons set forth in its prior opinion, that Maynard and Smith are

fiduciaries under ERISA, and are properly held liable for Maximum Metal's delinquent contributions. *See Maximum Metal*, 2015 WL 4935116, at *8.

Therefore, the Court holds that the Benefits Funds are entitled to summary judgment as to their claims under the 2005 CBA.

### C.   Damages

The Court has already granted attorneys' fees in the amount of $24,217.88 and costs in the amount of $940.68. *See Maximum Metal*, 2015 WL 4935116, at *11. The Benefits Funds do not appear to seek further fees or costs. *See* Dkt. 54 ("Strang Damages Decl."), ¶ 10. For the time period March 1, 2009 through July 31, 2009—as to which the Court has now granted summary judgment for the Benefits Funds—the Benefits Funds seek the principal amount of $3,037.24, interest (through September 29, 2015) of $2,913.22, and liquidated damages of $2,112.32. *See* Strang MSJ Decl. ¶ 39. As to the time period of August 1, 2009 through July 31, 2013—as to which the Court granted summary judgment for the Benefits Funds in its prior decision—they seek the principal amount of $111,246.06, interest (through August 21, 2015) in the amount of $33,547.83, liquidated damages of $22,241.76, and audit costs of $1,470. *See* Strang Damages Decl. ¶ 7.

With one exception, the Court perceives no deficiencies in the underlying documentation of the requested sums. *See generally* Dkt. 63 ("Shaw Damages Decl."). The exception is that the Benefits Funds appear to have calculated prejudgment interest through dates of uncertain significance—August 21, 2015 as to the period of August 2009 through July 2013; and September 29, 2015 as to the period of March 2009 through July 2009. The Court perceives that prejudgment interest as to the former period should have stopped accruing as of August 18, 2015, when the Court granted summary judgment on those claims. As to the period of March 1,

2009 through July 31, 2009, prejudgment interest should have continued to accrue while the instant motion for summary judgment was under consideration by the Court—*i.e.*, until the date of this decision.

Therefore, the Court directs the Benefits Funds to recalculate prejudgment interest consistent with this decision and to submit a letter to the Court by January 8, 2016 containing the revised figures. At that time, the Court anticipates directing the entry of final judgment on all claims.

## CONCLUSION

For the foregoing reasons, the Court grants summary judgment for the Benefits Funds as to claims arising under the 2005 CBA. The Court directs the Benefits Funds to inform the Court by January 8, 2016 of its recalculated interest figures. The Clerk of Court is directed to close the motion pending at Dkt. 56.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: December 17, 2015
New York, New York

7